**Richard S. THOMPSON, Plaintiff,**

v.

**LIQUICHIMICA OF AMERICA, INC., Liquichimica S. p. A., Liqam, Inc., Liquigas S. p. A., Liquifin of America, Inc. and Liquigas (Jersey) Holdings, Ltd., Defendants.**

**No. 79 Civ. 3540.**

United States District Court, S. D. New York.

Sept. 12, 1979.

Giallorenzi & Campbell, New York City, for plaintiff; Edward A. Keane, New York City, of counsel.

Mudge, Rose, Guthrie & Alexander, New York City, for defendants; Leonard Garmet, Donal J. Zoeller, Harold G. Levison, Edward H. Burnbaum, Jr., New York City, of counsel.

LASKER, District Judge.

In November of 1978 Richard S. Thompson entered into an agreement with Liquichimica of America, Inc., (LOA) by which a new company was to be formed, a part of which would be owned by Thompson and part by LOA. The parties further agreed that the new company would evaluate two proposed joint ventures in the chemical industry. Shortly thereafter, the Liquigas group, a family of companies which included LOA, concluded that it would be adverse to its interests to proceed with the contract because one of its members, Liquichimica Italiana S.p.A., had the capacity to produce the materials to which the Thompson-LOA contract related. Accordingly, the Liquigas group advised Thompson that although it admitted the validity of the November 14th agreement, it would not permut LOA to proceed. Instead, it entered into negotiations with Thompson to settle his rights.

Early in February, 1979, Thompson met with LOA's·president, Gerard J. Griesmer, and Giulio Porro of the Liquigas group to commence negotiations. Their discussions resulted in a letter from LOA to Mr. Thompson dated February 9, 1979, wich reads as follows:

"Dear Mr. Thompson:

Following the discussion we have had with you in the presence of Mr. G. Porro, representing the Liquigas Group, it is understood that all parties will exercise their best efforts to reach an agreement on or before May 15, 1979 for Richard S. Thompson to acquire Liquichimica of America, Inc. eith including the Ronson Corp. common stock as per proposal A attached, or excluding the Ronson stock as per proposal B attached.

It is agreed that the 90 days period referred to in paragraphs (1) and (4) of the November 14, 1978 Agreement is extended to May 15, 1979.

This letter will not relieve the parties from any obligations or liabilities that may arise from the non-completion of this agreement."

Thompson argues that the February 9th letter constitutes a binding agreement by which he was given the right to acquire LOA either alone or together with the Ronson Corporation common stock owned by it, and that the Liquigas group had the option to choose which of the two alternatives would be consummated. He asserts that some time after the February letter, the Liquigas group advised him that they refused to sell the Ronson stock and that thereafter he, Thompson by telex of May 1, 1979, exercised his "option" to acquire LOA alone.

Thompson has brought this suit on the claim that the defendants thereafter refused to sell him the "assets of Liquichimica of America, Inc. and its subsidiary companies" (Amended Complaint, ¶ 15).

Upon the filing of the complaint, Thompson moved for a preliminary injunction enjoining the defendants from disposing of their assets, particularly a parcel of land located in the State of Louisiana and the Ronson Corporation stock owned by them.

The defendants oppose the motion and move the for summary judgment.

■ Thompson's original complaint consisted of four counts, asserting rights under the February 9th letter only. In substance, he claimed that he had a contract to buy LOA which had been breached in various ways by one or more of the defendants. The defendants' motion for summary judgment is based on the ground that the February 9th letter is not a binding contract. Accordingly, the sole issue as to the first four causes of action is whether the February 9th letter constitutes a binding agreement. A reading of this letter makes it hard to understand how it can be contended that it is a binding contract. For example, nowhere in its language is the word "agreement" used; to the contrary, the critical language of the letter is the clause which states that "it is understood that all parties will exercise their best efforts to reach an agreement on or before May 15, 1979." The defendants argue that this language, and the entire text of the February 9th letter constitutes no more than a universally un-enforceable "agreement to agree." This seems apparent on its face, and there would be no reason to look into the matter further had the plaintiff not submitted the affidavit of Mr. Griesmer, who drafted the February 9th letter, to the effect that it was intended that the letter should constitute a binding contract between the plaintiff and defendants.

We have reviewed the Griesmer affidavit with care and find that it does not carry the day. Its contentions are so inconsistent with the terms of the letter of February 9th that it cannot be accepted as the "illumination" of the meaning of the letter it purports to be. Moreover, Griesmer's contention that "the contract which I reduced to writing on February 9th was a binding one" is the expression of a legal conclusion which would be inadmissible if he testified to this effect at trial. Finally, Griesmer's contentions that the February 9th letter was a "contract" and was intended to be "binding" is altogether at odds with the fact that the letter itself continues in force the agreement of November 14th which the February 9th "contract" was allegedly intended to replace. Although at argument on the motion we indicated that a further inquiry into the facts surrounding the formation of the alleged contract might be required under the decisions of this Circuit, a further study of the documents has persuaded us that, even in the light of the Griesmer affidavit, there is no basis for holding that the February 9th letter, insofar as it purports to constitute a contract for the acquisition by Thompson of LOA, is anything but an unenforceable agreement to agree. Accordingly, defendants' motion for summary judgment as to the four causes of action in Thompson's original complaint is granted.

\* \* \*

■ As a result of the claim by the defendants that the February 9th letter is unenforceable the plaintiff has moved to amend his complaint by adding two causes of action. The proposed sixth cause of action asserts a claim under the original contract of November 14, 1978 and, in particular, alleges that:

"Plaintiff and defendants entered into a written agreement whereby it was agreed that a joint venture would contract operate a petrochmical refinery." (Amended Complaint, ¶ 33)

The defendants oppose the inclusion of this cause of action in the amended complaint on the grounds that on its face the agreement of November 14, 1978 does not obligate either party to build a petrochmical plant and, indeed, does not refer to any such physical construction. We agree with the defendants. What the contract does say is:

"(8) LIQAM will promptly proceed to evaluate the two local manufacturing ventures judged to be commercially feasible at this time, i. e., a petrochemical refinery project to produce n-paraffins, n-olefins, and linear alcohols, and a methionine project in Louisiana. Priority will be given to the petrochemical project.

(9) It is intended that the petrochemical project be carried out by a joint venture company formed by a partnership of RST and LIQAM, wherein RST contributes the necessary cash equity, and secures the financing, and wherein LIQAM provides the necessary product supply to secure an established market to be turned over to the account of the new venture, and contributes necessary production, marketing, and management know-how.

(10) It is likewise intended that the methionine project be carried out by a joint venture company formed by a partnership of RST and LIQAM, wherein RST contributes the necessary cash equity, and completes the financing, and wherein LIQAM provides the plant site, arranges for government approvals, and contributes the necessary management know-how, as well as applies its best efforts to conclude a marketing agreement with Mitsui, and to obtain approval for the transfer of the Nippon Soda Company license agreement, including the basic technology and engineering know-how, specifications, and drawings developed to date.

This language does not provide that the parties will build a petrochemical refinery but only that they will proceed to evaluate two possible chemical manufacturing projects. Since plaintiff's proposed sixth cause of action is fatally defective, plaintiff's motion to add it to the complaint is denied.

\* \* \*

■ The proposed fifth cause of action again relies on the February 9th letter and, in particular, on the "best efforts" clause. It alleges that the February 9th letter imposed on the defendants an obligation to "use their best efforts to reach an agreement to sell to the plaintiff either all of the assets of Liquichimica of America, Inc., and subsidiary companies or all of the assets of Liquichimica of America, Inc. and subsidiary companies and certain Ronson stock" and that the defendants breached that agreement, not by refusing to sell LOA, but by "failing to use their best efforts in failing to reach an agreement with plaintiff." The defendants oppose the inclusion of this cause of action, arguing that it is merely a reiteration of the claim set in the first four causes of action, and that the argument to use best efforts is no more enforceable than the alleged "agreement" allowing Thompson to buy LOA. While the defendants' argument has appeal, there is authority, limited though it may be, that a trial court should not, on motion, dismiss a claim based on a "best efforts" clause where a factual question may exist as to whether the parties intended the use of that clause to impose a binding obligation. See, for example, *Itek Corp. v. Chicago Aerial Industries, Inc.*, 248 A.2d 625 (Del.1968); *Arnold Palmer Golf Co. v. Fuqua Industries, Inc.*, 541 F.2d 584 (6th Cir. 1976).

Since the parties have not had an opportunity to brief this issue, decision is reserved with regard to the fifth cause of action pending the submission of supplemental memoranda as to the applicability or non-applicability of the cited decisions or other authority to the facts of this case.

\* \* \*

Because the first four and sixth causes of action must be dismissed we conclude that the plaintiff has not made a showing of probable success on the merits and that in the circumstances there is no justification for the granting of the preliminary injunction which he seeks. This conclusion is fortified by the fact that he has offered no evidence to support his hypothesis that the defendants have transferred assets or discontinued operations for the purposes of defrauding him.

In sum, defendants' motion for summary judgment is granted. Plaintiff's motion to amend the complaint is denied except with regard to the proposed fifth cause of action, as to which decision is reserved. Plaintiff's motion for preliminary injunction is denied.

It is so ordered.